# Commonwealth ex rel. Goddard v. Chapman

*Roy Ogburn,* for plaintiff.
*Dean A. Bowman,* for defendants.

COFFROTH, *P.J.,* April 2, 1980—This case brings before us for review the order of November 20, 1979, against defendants, parents of an 18 year old son committed to the custody of Somerset County Children and Youth Services (No. 4B Juvenile 1979), for his support in the amount of $315 monthly. The actual cost to the county for the maintenance and education of the boy is $660 monthly, which is the amount sought by plaintiff who is the director of Children and Youth Services. The present order was made on plaintiff's petition for an increase over the initial order of March 28, 1979 for $181.25 which was based on defendant father's then income; the increased amount was based on the larger income of both parents.*

---

*Although the boy in question is now 18 years of age, he is a dependent child. He was placed with the agency on the basis of the request of the parents and a voluntary placement agreement stating that: "Difficulties have arisen between Tony and his parents which suggests the advisability of an alternative placement." The placement order was made February 2, 1979.

Defendant mother is a public school teacher whose annual take-home salary is $12,098.53. Defendant father is director of social services for the Somerset County Board of Assistance (Pennsylvania Department of Public Welfare) whose annual take-home salary is $13,965. The parties also receive $80 monthly from a rental property, which barely covers the taxes and repairs, and defendant father also earns about $200 annually as a scholastic basketball referee covering only his expenses in that activity. There is, however, the sum of $75 deducted monthly from the father's salary for savings bonds which is additional income of $900 a year, which must be added to take-home pay. Accordingly, the parties have a combined monthly take-home pay of $2,246. They own their own home and two automobiles and are also the parents of one daughter, 20 years of age, who is attending college.

Defendants' application for review states as its basis that "the order does not taking [sic] into full bill [sic] of defendant in that the cost of a daughter in college is not listed." The daughter is in her third year of college at the University of the Andes, Bogota, Columbia; she took her first two years at Bryn Mawr, will return there for her senior year in 1980-81, and hopes to go on to study law. She is presently on a Rotary fellowship in Columbia which pays her tuition, and a living allowance, but her trips home and her clothing are a family expense. Her education at Bryn Mawr is financed in part by an educational loan to the parents which is repaid at the rate of $240 per month and by additional savings; the loan was originally expected to defray the cost of four years of college, but with tuition increases will not do so; tuition at Bryn Mawr for

the next year will amount to approximately $5,000. Defendants' living expenses are modest in light of their station in life.

## DISCUSSION

It is apparent in this case that defendants have two special children. Their son is in a sense handicapped or disadvantaged, as evidenced by his removal from the home for special placement. Their daughter is above average, perhaps gifted, and should go far if given the educational opportunity. Both are dependent adults, but are dependent for different reasons: the son is not self-supporting because of his present incapacity, whereas the daughter is capable of self-support but is not gainfully employed because she is a full time college student. The cost of maintaining each in the present dependent status is high, the daughter's educational cost being the higher. Except for the one year Rotary Fellowship grant, defendants are bearing the full cost of the daughter's dependency; but they bear only a portion of the son's dependency (less than one-third under the former support order, less than one-half under the support order now being reviewed) and the county pays the balance.

Counsel for defendants argues that they cannot pay the costs for both children in full, that they should be given full credit and allowance for the daughter's college and living expense, and that then the support order for the son should be adjusted according to what money may remain for that purpose. But the law does not permit such an ordering of priorities. We discussed this question of priorities in connection with college education in Com. ex rel. Guthrie-Dively v. Dively, 37 Somerset 357, 359-361 (1979), as follows:

"The adult daughter's claim for college education expense stands on a different footing than does a claim for maintenance of a dependent. The latter is an absolute necessity, whereas college expense is not. Valuable and desirable as education is, it does not have equal urgency with the need for food, clothing and shelter and such survival needs. Thus, an order for maintenance of dependents may properly require the obligor to make personal sacrifice to insure their welfare. Commonwealth ex rel. Williams v. Williams, 242 Pa. Superior 550 (1976). As we said in Commonwealth ex rel. Horner-Shaffer v. Horner, 30 Somerset Legal Journal 254, 258 (1975): '. . . a spouse or parent of marginal means must expect that making support payments will be difficult and that some sacrifice may have to be made for the support of the family he or she has helped bring into being.' The courts will not, however, require a parent to sacrifice or to bear any serious hardship to educate a child in college.

"In Commonwealth ex rel. Swank v. Swank, 101 Domestic 1974, opinion of 8-31-77, . . . we summarized the principles of law governing parental obligation for support and education of children, as follows:

"'Ordinarily, a parent is not required to support an adult child; it is presumed that an adult child is capable of self support and that the parental duty of support then comes to an end. But this presumption is not conclusive; it is rebuttable by evidence showing that the adult child is incapable of self support, in which event the parent continues to be liable for support so long as such dependency actually continues. See Commonwealth ex rel. Schulberg v. Hirsch, 236 Pa. Superior 179 (1975); PLE, Parent and Child section 54; CJS, Parent and Child section 17; see also 62 P.S. 1973.

"'The parents' obligation of child support may extend to providing education in college or other post high school institution, even in the absence of an agreement by the parent to provide it, if the child is able and willing to pursue a course of studies and if the parent has sufficient means to provide it without undue hardship upon the parent. See Emrick v. Emrick, 445 Pa. 428 (1971); Commonwealth ex rel. Schmidt v. Schmidt, 223 Pa. Superior 20 (1972); Commonwealth ex rel. Welsh v. Welsh, 222 Pa. Superior 585 (1972); Commonwealth ex rel. Hanerkam v. Hanerkam, 221 Pa. Superior 182 (1972); Fusco Estate, 16 D. & C. 2d 129 (1958); PLE Parent and Child section 53; Summary of Pennsylvania Jurisprudence, Domestic Relations section 287.1; 18 Villanova Law Review 243 (1972).'"

See also Hutchinson v. Hutchinson, 263 Pa. Superior Ct. 299, 397 A. 2d 1218 (1979). The court in Williams, supra, more specifically dealt with college education as follows, 242 Pa. Superior Ct. 552: "'[A] father has no duty to aid in providing a college education for his child, no matter how deserving, willing or able the child may be, unless the father has sufficient estate, earning capacity or income to enable him to do so without undue hardship to himself.'" Although that case dealt with parental duty to pay for college, its basic rationale is equally applicable to parental right to pay for college when doing so disables them from meeting their support obligation to another dependent non-college child.

The obligation of defendants for the support, maintenance and education of their less fortunate son should be of equal importance to them as the education of their gifted daughter; in the eyes of the

law, the dependent son's cost of living and basic education must come first.

In determining the amount which defendants must contribute to the support of their son, we first note that the actual cost is $660 per month. As stated in Com. ex rel. Benedict v. Benedict, 35 Somerset 211, 213 (1978):

"Before applying guidelines and making adjustments to determine what amount a defendant can or should pay for the support of his family, the Court's first step in a support case is to determine the amount of support needed, that is, the reasonable cost of living for the dependents. Commonwealth ex rel. Shumaker v. Shumaker, 35 Somerset Legal Journal 104 (1978)."

Our local guidelines for the amount of a support order fix 15 percent of the parents' take-home pay as the amount of support payable for one child, and 25 percent thereof for two children. Where dependent children are separated, our court has divided the percentage, giving an equal portion to each: Com. ex rel. Knopsnyder v. Knopsnyder, 32 Somerset 13 (1975). Using the latter theory, the department in this case concluded that the guideline applicable here to defendants' son should be 12½ percent. But that is erroneous; in Com. ex rel. Guthrie-Dively v. Dively, supra, at footnote [2], we stated that children in college are not included within the guidelines and will be provided for only after the support of other dependents is taken care of. Consequently, the proper guideline here is 15 percent for the son's support. Applying the 15 percent guideline to the take-home pay of defendants produces an order of $336.90, greater than the

present order. Moreover, local guidelines are only that and must give way when facts and equities point to a different result according to need and the amount of income fairly available for support of the dependent. See Com. ex rel. Benedict v. Benedict, supra, 35 Somerset 213-14. Consequently, guidelines are no obstacle to increasing this support order further if warranted. We do not undertake to do so in this case since only defendants have filed for review. But, given the principles of law applicable to this and like cases, and taking into consideration that the increased order under review pays only one-half of the son's maintenance and that the taxpayers are paying the balance, there is no justification for reducing this order.

We do not attribute to defendants any neglect of or callousness toward their son. Instead, we recognize that they, having made sacrifices to educate themselves and to become successful in the best American tradition, understandably feel that their resources might be most wisely applied to developing their gifted daughter's chances for better education and life. But the values and priorities which the law insists upon in child support cases will not allow it.

## ORDER

Now, April 2, 1980, defendants' application for review is denied, and the support order of November 20, 1979 in the amount of $315 monthly for the support of their dependent son is affirmed. Costs on defendants.